IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 26, 2021 Session

**STATE OF TENNESSEE v. ROBERT M. ATWELL, JR.**

**Appeal from the Criminal Court for Washington County**
**No. 44381     Stacy L. Street, Judge**

_____

**No. E2021-00067-CCA-R3-CD**

_____

Defendant, Robert M. Atwell, Jr., was convicted by a jury of one count of violating the sex offender registry. The trial court imposed a sentence of one year, with ninety days incarceration, and the remainder to be served on probation. On appeal, Defendant argues that: the trial court erred by admitting specific evidence of his prior sexual offenses after he offered to stipulate his status as a sex offender; his conviction for violation of the sex offender registry violates the Ex Post Facto Clause of both the United States and Tennessee Constitutions; there was a fatal variance between the indictment and the proof presented at trial; and there was cumulative error. Following our review of the entire record and the briefs of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

William S. Lockett, Jr., Knoxville, Tennessee, for the appellant, Robert M. Atwell, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Senior Assistant Attorney General; Ken C. Baldwin, District Attorney General; and Justin Irick, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

This case arises from Defendant's presence at the South Side Elementary School on August 6, 2018. Defendant was a registered sex offender from the State of Missouri and

had accompanied his girlfriend to register her son to attend the school without first obtaining permission or giving written notice to the school of his sex offender status before entering the school's campus. The Washington County Grand Jury returned an indictment against Defendant charging him with violation of the Tennessee Sex Offender Registry Act ("SORA").

At trial, Officer Brett Jenkins of the Johnson City Police Department testified that on August 6, 2018, he was assigned to the South Side Elementary School and another school as a school resource officer. He said that August 6 was the first day of school which included registration for new students. Officer Jenkins explained that new students were accompanied by their parents into the school to obtain the necessary paperwork, "and provide paperwork that's necessary in order to register them in that particular location." He testified that anyone entering the school had to be "buzzed" in by office staff and report to the office. Officer Jenkins further testified:

> And Johnson City Schools purchased a security system from a vendor Raptor and we have a Raptor Security System now located in every office. And when a person comes into the school for the first time they provide a state or government issued ID that is scanned through that system. That system will let them check NCIC, the nationwide database for anyone who is an active registered sex offender and that's the only criteria that it checks for.

Officer Jenkins testified that the Raptor system worked on an issued identification ("ID") from any state and would alert to convictions from any state.

Officer Jenkins testified that on August 6, 2018, he was called to South Side Elementary school from the other school after there was an alert from the Raptor System on Defendant's Nevada driver's license. After office staff turned the driver's license over to Officer Jenkins, he spoke with Defendant. Officer Jenkins confirmed Defendant's identity and established that he was a registered sex offender in the state of Missouri. Defendant told Officer Jenkins that he was at the school to assist his girlfriend in registering her son for school. Officer Jenkins did not recall Defendant referring to the child as Defendant's son. Officer Jenkins testified: "He said that he had, I believe he said he had come in the night before or just a couple of nights before and that he was there to assist her in registering her son." Defendant provided Officer Jenkins with a Missouri address and said that he was a "self-employed band driver and drove across the country frequently." Officer Jenkins informed Defendant that under Tennessee law, Defendant should have obtained written permission to be on campus or enter the school. Officer Jenkins did not recall Defendant saying that he was helping his girlfriend because she had seizures.

Investigator Shane Malone of the Johnson City Police Department testified that he spoke with Defendant on August 6, 2018, after Defendant had been taken into custody and

transported to the police station. Defendant was advised of his *Miranda* rights, signed a waiver of those rights, and agreed to speak with Investigator Malone. Investigator Malone testified that he reviewed two judgments of conviction against Defendant from the State of Missouri which placed Defendant on the sex offender registry there. One conviction in the Circuit Court for Linn County at Linneus, Missouri, dated October 28, 1996, was for misdemeanor child molestation in the second degree. The second conviction in the Circuit Court for Adair County, Missouri, dated August 16, 2001, was for sexual assault.

Defendant admitted to Investigator Malone that he was a registered sex offender. He said that he had just arrived in town "the day prior and he was visiting his girlfriend at the time whose son she was enrolling at school at South Side." Defendant denied being the child's parent or legal guardian but said that he had been in a relationship with the child's mother for approximately two years. Investigator Malone testified that Defendant said he usually visited Tennessee for one or two days at a time, and he was last in Tennessee approximately six months prior to the interview. Defendant indicated that he knew the laws in Tennessee which required him to report if he stayed in the state for more than forty-eight hours and that he would usually leave Tennessee before that time. Defendant indicated that his girlfriend, who was a paralegal, had researched the sex offender laws in Tennessee and told him that it was okay for him to be at the school. He said that he had never been questioned when he visited other schools in Missouri.

Defendant testified that he visited the South Side Elementary School on August 6, 2018, because his girlfriend asked him to help register her son for school. He explained that it was the anniversary of her father's death, and she thought that Defendant would help calm her son who had "autistic spectrum disorder." Defendant testified that his girlfriend worked as a paralegal for several attorneys, and she advised him that she had checked, and it was "fine" for him to go to the school. Defendant asserted that he relied on her advice. He thought that he was acting as a custodian of his girlfriend's son when he went to the school because he and his girlfriend had discussed making their relationship "a little more permanent," and her son needed a male role model. However, Defendant admitted that he was not the child's biological or adopted father, nor had he at any point been granted custody of the child. Defendant testified that he was unaware that he had to obtain written permission from the principal to enter South Side Elementary School.

Defendant testified that he was asked for his driver's license when he entered the school and he was aware that they would check to see if he was a sex offender, but he was not concerned. He told Officer Jenkins and the school psychologist that he had been advised that he could be at the school. Defendant testified that he was not immediately arrested and was told to email the school before visiting again. He said that Officer Jenkins recorded his license plate number and advised him to "register with the city before my 48 hours was up before 5:00 o'clock that day and I told him I would. And then he sent me on my way." Defendant testified, "I made a mistake. I wasn't intending to break any laws. I try not to do that. I've got too much going on to jeopardize that." He estimated that he

visited Tennessee five times in the two years that he and his girlfriend had been dating. Defendant assumed that Tennessee's sex offender laws were very similar to Missouri's, "because Missouri has one of the most stringent set of laws on sex offenders in the nation[.]" He agreed that under Missouri law, he was not to be present within 500 feet of any school when persons under the age of eighteen were present unless he was a "parent, legal guardian or custodian of the person and ha[d] obtained permission from the school superintendent, school board, or principal of a private school."

Emma Beazley, Defendant's former girlfriend, testified that she and Defendant went to South Side Elementary School on August 6, 2018, to register her son for school. She said that she and Defendant had been seeing each other for approximately two years at the time, but Defendant lived in Missouri and in Kansas City. Ms. Beazley testified that Defendant visited sporadically depending on "whether or not he was on tour." She said that the longest Defendant stayed with her was for two weeks in October of 2017.

Ms. Beazley was aware that Defendant was registered as a sex offender in Missouri, and she and Defendant had "generally" researched the sex offender laws in Tennessee approximately six months before going to the school to determine if Defendant could live with her and her son. She was aware that Defendant could not live near a school. Ms. Beazley did not recall whether she told Defendant that it was fine for him to go to the school with her. She said:

> If I did, it wouldn't be under any actual legal capacity. I can't practice law. I'm only a paralegal and any research that I would have done would have been with that knowledge and with me explicitly saying that I cannot give legal advice here is how I interpret this. I cannot give legal advice and so I would not have done that.

Ms. Beazley agreed that Defendant was not her son's biological or adoptive father, and she did not do or say anything to Defendant to indicate that he was a parent or legal guardian to her son.

Ms. Beazley agreed that she had some issues with seizures, and Defendant went to school with her to register her son on the anniversary of a tragic event in her life. She said that Defendant willingly gave his ID to school officials on August 6, 2018, and it did not appear to Defendant that he was doing anything wrong. Ms. Beazley testified that she did not know if Defendant relied on their conversations about the sex offender laws to determine whether he could be in the school.

*Analysis*

## I.      Refusal to Accept Defendant's Stipulation to Being a Sex Offender

Defendant argues that the trial court erred by admitting specific evidence of his prior sexual offenses after he offered to stipulate his status as a sex offender to prove his charge for violation of the SORA. The State counters that its refusal to accept Defendant's stipulation and the subsequent admission of the evidence was harmless error and does not entitle him to a new trial.

It is well-established "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod,* 937 S.W.2d 867, 871 (Tenn. 1996). Tennessee Rule of Evidence 404(b) permits the admission of evidence of prior conduct if the evidence of other acts is relevant to a litigated issue such as identity, intent, or rebuttal of accident or mistake, and the probative value outweighs the danger of unfair prejudice. Tenn. R. Evid. 404(b) Advisory Comm'n Cmts.; *see State v. Parton,* 694 S.W.2d 299, 303 (Tenn. 1985); *State v. Hooten,* 735 S.W.2d 823, 824 (Tenn. Crim. App. 1987). However, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). Before admitting evidence under Rule 404(b), the rule provides that (1) upon request, the court must hold a hearing outside the jury's presence; (2) the court must determine that the evidence is probative on a material issue and must, if requested, state on the record the material issue and the reasons for admitting or excluding the evidence; (3) the court must find proof of the other crimes, wrongs, or acts to be clear and convincing; and (4) the court must exclude the evidence if the danger of unfair prejudice outweighs its probative value. *Id*.

"[A] defendant can offer to stipulate to the elements of an offense, but by doing so cannot prevent the jury from learning of an element of the offense or stipulation." *State v. Marvin Senathan Hall, Jr.*, No. W2008-00933-CCA-R3-CD, 2009 WL 1643435, at *8 (Tenn. Crim. App., at Jackson, June 12, 2009). However, it is well-settled that the State is free to reject a defendant's offer to stipulate to certain facts. *State v. Smith*, 644 S.W.2d 700, 701 (Tenn. Crim. App. 1982); *State v. Griffis*, 964 S.W.2d 577, 595 (Tenn. Crim. App. 1997). "[A] mere offer to stipulate evidence does not render that evidence irrelevant under Rule 404. *State v. James*, 81 S.W.3d 751, 761 (Tenn. 2002); *see also State v. Robert J. Wrigglesworth, Jr.*, No. M2005-01841-CCA-R9-CO, 2006 WL 2069430, at *4 (Tenn. Crim. App., at Nashville, July 26, 2006). Concerning status offenses, such as violation of the sex offender registry, "specific references to the prior felony [are] relevant to establish an essential element of the charged offense." *State v. Curtis Dewayne Brown*, No. E2019-02052-CCA-R3-CD, 2021 WL 5318389, at *11 (Tenn. Crim. App, at Knoxville, Nov. 16, 2021), *no perm. app. yet filed*.

However, in *State v. James*, 81 S.W.3d 751, 761 (Tenn. 2002), defendant was charged with felony escape which required the State to prove that he was incarcerated for a felony at the time of the escape. In order to prevent the jury from learning of the specific felonies for which he had been convicted, defendant offered to stipulate that he had been incarcerated for a felony at the time of his escape. The State rejected defendant's

stipulation and presented testimony at trial identifying each of defendant's prior felony convictions. Our supreme court in *James* concluded:

> [W]e hold that evidence of the specific offenses for which the defendant had previously been convicted is relevant to establish the prior-conviction element of the offense of felony escape. However, we also hold that when the only purpose of the other-acts evidence is to prove the defendant's status as a convicted felon, and when the defendant offers to stipulate to his prior convictions, the names of the offenses should not be admitted into evidence because the risk of unfair prejudice outweighs their probative value.

*Id.* at 762.

In this case, the following exchange took place concerning Defendant's prior convictions from Missouri:

> [Defense counsel]: Judge, I guess there is one question about how far you're going to let the State get into the facts of [Defendant's] prior convictions. We will stipulate that he's a sex offender.
>
> [Prosecutor]: Your Honor, a stipulation does not bar the State from entering his prior convictions. I have case law to that effect, if the Court would like to see it.
>
> THE COURT: I mean, I'm not going to let him go into the underlying facts, but I think they can put in the judgment as evidence of - -
>
> [Defense counsel]: There are two judgments which I think would be redundant to put both of them in to establish he's a sex offender.
>
> [Prosecutor]: Both of those judgments placed him on that sex offender registry and both of them are listed on the government website.
>
> THE COURT: I'll allow the documents in, but no discussions about the underlying facts of those offenses.

At trial, Investigator Malone testified that he reviewed two judgments of conviction against Defendant from the State of Missouri, which placed Defendant on the sex offender

registry there. One conviction in the Circuit Court for Linn County at Linneus, Missouri, dated October 28, 1996, was for misdemeanor child molestation in the second degree. The second conviction in the Circuit Court for Adair County, Missouri, dated August 16, 2001, was for sexual assault. The document attached to Defendant's judgment for misdemeanor child molestation indicated that Defendant had sexual contact with a twelve-year-old child.

In this case, the State was required to prove that Defendant had a prior conviction for a sexual offense or violent sexual offense and that he was knowingly on the grounds or premises of a school when he had reason to believe that children under the age of eighteen years old were present. T.C.A. §40-39-211(d)(1)(A). Defendant's offer to stipulate that he was a sex offender encompassed one of the elements that the State was required to prove. The SORA defines a "sexual offender" as a "person who has been convicted in this state of committing a sexual offense or has another qualifying conviction[.]" T.C.A. § 40-39-202(19). As in *James*, the sole purpose of admitting Defendant's prior convictions as evidence was to prove status as a convicted sex offender. Therefore, we conclude that the trial court erred by allowing the State to introduce specific proof of Defendant's prior offenses. *James*, 81 S.W.3d at 762.

However, the error is subject to harmless error analysis. *Id.* Defendant is not entitled to relief on this basis unless the error complained of "affirmatively appears to have affected the result of the trial on the merits. Tenn. R. Crim. P. 52(a). "[W]hen evaluating the effect of an error on the trial, we will evaluate that error in light of all the other proof introduced at trial." *James*, 81 S.W.3d at 763. "The greater the amount of evidence of guilt, the heavier the burden on the defendant to demonstrate that a non-constitutional error involving a substantial right more probably than not affected the outcome of the trial." *State v. Rodriguez*, 254 S.W.3d 361, 372 (Tenn. 2008).

In this case, the evidence that Defendant violated the Tennessee SORA was overwhelming and uncontroverted. He does not dispute that he was convicted of a sexual offense or violent sexual offense and that he was present at South Side Elementary School on August 6, 2018, without first obtaining permission or giving written notice to the school of his sex offender status before entering the school's campus. The only dispute was whether Defendant was at the school acting as a parent or legal guardian to his girlfriend's son, which would serve as a defense. However, nothing in the record supported such a defense. Defendant was not the child's biological or adoptive father and thus, did not qualify as a parent under the SORA. T.C.A. § 40-39-202(11). Although Defendant asserted that he relied on advice of his girlfriend, who was a paralegal, to determine that he could accompany her into the school to register her son, this does not serve as a defense.

We conclude that the admission of the specific sexual offenses for which Defendant had previously been convicted "had no impact whatsoever on the jury's verdict" in this case. *State v. Billy J. Coffelt and Lyle T. Van Ulzen*, No. M2002-01214-CCA-R3-CD, 2003

WL 22116628, at *6 (Tenn. Crim. App., at Nashville, Sept. 11, 2003). Defendant is not entitled to relief on this issue.

## II. Whether Tennessee's Sex Offender Registry Act Violates the Ex Post Facto Clause of Both the United States and Tennessee Constitutions

Defendant contends that he is entitled to plain error review for his claim that Tennessee's SORA violates the Ex Post Facto Clause of the United States and Tennessee Constitutions. The State argues that Defendant is not entitled to plain error relief because he has failed to show that his conviction for violation of the SORA violated a clear and unequivocal rule of law or that one of his substantial rights was adversely affected.

Initially, we point out and Defendant concedes that he waived the issue of whether the SORA violates the Ex Post Facto clause by failing to raise it in the trial court. *See State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived"). Therefore, the issue may be considered under plain error review. We may only consider an issue as plain error when all five of the following factors are met:

> a) the record must clearly establish what occurred in the trial court; b) a clear and unequivocal rule of law must have been breached; c) a substantial right of the accused must have been adversely affected; d) the accused did not waive the issue for tactical reasons; and e) consideration of the error is "necessary to do substantial justice."

*State v. Adkisson,* 899 S.W.2d 626, 641–42 (Tenn. Crim. App. 1994) (footnotes omitted). "[C]omplete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *State v. Donald Ray Smith*, 24 S.W.3d 274, 283 (Tenn. 2000). "When asserting plain error, the defendant bears the burden of persuading the appellate court that the trial court committed plain error and that the error was of sufficient magnitude that it probably changed the outcome of the trial." *State v. Michael Smith*, 492 S.W.3d 224, 232-33 (Tenn. 2016) (citing *State v. Hester*, 324 S.W.3d 1, 56 (Tenn. 2010)).

In this case, we conclude Defendant has not established that he is entitled to plain error relief. Specifically, he has not demonstrated that a clear and unequivocal rule of law was breached or that a substantial right was adversely affected. *See Adkisson,* 899 S.W.2d at 641-42; *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016); *Hester*, 324 S.W.3d at 56.

Both the United States and Tennessee Constitutions prohibit ex post facto laws. U.S. Const. Art. I, § 10, cl. 1; Tenn. Const. Art. I, § 11. In order for a law to fall within the prohibition, it "must be retrospective, that is, it must apply to events occurring before its

enactment" and "it must disadvantage the offender affected by it." *State v. Pike*, 978 S.W.2d 904, 925 (Tenn. 1998) (quoting *Miller v. Florida*, 482 U.S. 423, 430 (1987)) (internal quotation marks omitted). Four types of law are prohibited:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (quoting *Calder v. Bull*, 3. U.S. 386, 390 (1798) (*seriatim* opinion of Chase, J.)). However, the United States Supreme Court has held that changes in procedural laws are not ex post facto, even if the change works to the disadvantage of a defendant. *Dobbert v. Florida*, 432 U.S. 282, 293 (1977). Instead, the prohibition of ex post facto laws "was intended to secure substantial personal rights against arbitrary and oppressive legislation. . . and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." *Id.*

First, Defendant has not demonstrated that a clear and unequivocal rule of law was breached. Tennessee's SORA laws have consistently been upheld against ex post facto challenges:

> [t]o date, every ex post facto challenge of Tennessee's statutory scheme requiring persons classified as sexual offenders to register with the TBI sex offender registry has been rejected. The United States Supreme Court and the United States Court of Appeals for the Sixth Circuit upheld Tennessee's sex offender registry in <u>Smith v. Doe</u>, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003), <u>Conn. Dept. of Public Safety v. Doe</u>, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003), <u>Doe v. Bredesen</u>, No. 3:04-CV-566, 2006 WL 849849 (E.D. Tenn. Mar. 28, 2006), <u>aff'd</u> 507 F.3d 998 (6th Cir. 2007), <u>pet. cert. denied</u>, —— U.S. ——, 129 S. Ct. 287, 172 L. Ed. 2d 210 (2008), and <u>Cutshall v. Sundquist</u>, 193 F.3d 466 (6th Cir. 1999). Furthermore, both the Court of Appeals and

the Court of Criminal Appeals of Tennessee upheld the sex offender registry against ex post facto challenges.  See Strain v. Tennessee Bureau of Investigation, No. M2007-01621-COA-R3-CV, 2009 WL 137210 (Tenn. Ct. App. Jan. 20, 2009); State v. Gibson, No. E2003-02102-CCA-R3-CD, 2004 WL 2827000 (Tenn. Crim. Ct. App. Dec. 9, 2004).

John Doe v. Robert E. Cooper, Jr., as Attorney General for State of Tennessee, No. M2009-00915-COA-R3-CV, 2010 WL 2730583, at *7 (Tenn. Ct. App. July 9, 2010), perm. app. denied (Tenn. Dec. 7, 2010).  The Tennessee Supreme Court has considered the Act and noted that "[a]n examination of the clearly-expressed legislative intent of the registration act supports the conclusion that the registration requirements imposed by the sex offender registration act are nonpunitive and that they are therefore a collateral consequence of a guilty plea."  Ward [v. State], 315 S.W.3d [461,] 469-70 (quoting Tenn. Code Ann. § 40-39-201).  "[W]hile the registration requirement is undoubtedly a definite, immediate, and largely automatic consequence of a conviction of a sexual offense or violent sexual offense, it does not have an effect on the length, manner, or service of the defendant's punishment."  Id. at 472.

*Richard Terry Woodson v. State*, No. M2018-02153-CCA-R3-PC, 2020 WL 406855, at *3 (Tenn. Crim. App., at Nashville, Jan. 24, 2020) *no perm app. filed.*

Although the Court of Appeals for the Sixth Circuit in *Does #1-5 v. Snyder*, *et al*., 834 F.3d 696 (6th Cir. 2016), which Defendant relies on in support of his argument, held that Michigan's SORA constituted an ex post facto violation as applied to five sex offenders in Michigan, this does not create a clear and unequivocal rule of law that the Tennessee SORA on its face violates the Ex Post Facto Clause. *See Does #1-2 v. Lee*, *et al*., 518 F. Supp. 3d 1157, 1182 (6th Cir. 2021).  Nor do any of the Sixth Circuit cases involving an ex post facto challenge to Tennessee's SORA create a clear and unequivocal rule of law that the SORA violates the Ex Post Facto Clause as a matter of law.  *See Id*.; *Doe v. Rausch*, 461 F. Supp. 3d 747, 768-69 (E.D. Tenn. 2020); *Doe v. Rausch*, 382 F. Supp. 3d 783, 799-800 (E.D. Tenn. 2019).  In *Does #1-2 v Lee*, the court declined to find that the SORA constituted a facial ex post facto violation.  The court concluded:

As noted above, to succeed on a typical facial challenge, "a plaintiff must establish 'that no set of circumstances exists under which [the statute] would be valid.'"  *Speet*, 726 F.3d at 872 (quoting *Stevens*, 559 U.S. at 472, 130 S.Ct. 1577).

As discussed above, Plaintiffs ask the Court to find that "every retroactive application" of SORA is unconstitutional under the Ex Post Facto Clause. (Doc. No. 93 at 11). In other words, they ask the Court to find that the statute is unconstitutional on its face. But the Court declines to do so because Plaintiffs have not made a sufficient showing, as required, that *all* retroactive applications of SORA are unconstitutional. The Court has noted above this lack of evidence, and the fact that several of the factors cut against a finding that SORA imposes punishment in all cases or as a general matter. The most glaring of these is the rational-connection factor, which "is a '[m]ost significant' factor in our determination that the statute's effects are not punitive." *Smith v. Doe*, 538 U.S. at 102, 123 S.Ct. 1140 (quoting *United States v. Ursery*, 518 U.S. at 290, 116 S.Ct. 2135).

Therefore, the Court finds that it cannot grant Plaintiff's Motion to the extent is makes a facial challenge.

*Does #1-2 v Lee*, 518 F. Supp. 3d at 1203.

Defendant in this case has also failed to show that one of his substantial rights was adversely affected by Tennessee's SORA. The record does not demonstrate that the SORA as applied to Defendant violated the Ex Post Facto Clause. Although Defendant argues in his brief that the restrictions and reporting requirements of Tennessee's SORA have the effect of punishment, he does not allege how the SORA, as applied to his particular circumstances, violates the Ex Post Facto Clause. As-applied constitutional challenges are "limited to [the complaining party's] particular situation and circumstances." *Rausch*, 461 F. Supp. 3d at 761-62; *see also Barry L. Clark v. Gwyn, et al.*, No. M2018-00655-COA-R3-CV, 2019 WL 1568666, at *7, (Tenn. Ct. App. April 11, 2019) (Appellant "must demonstrate by the 'clearest proof' that the challenged provisions of the 2004 [SORA], as applied to him, are so punitive in effect that they constitute punishment in violation of the ex post facto provisions of the federal and state constitutions."). Additionally, as pointed out by the State, Defendant was a resident of Missouri, and nothing in the record indicated that he was unable to find a house or job due to the SORA while he was visiting Tennessee. The record does not reflect that Defendant had children in Tennessee or that the SORA restricted his ability to parent any children outside of Tennessee. Therefore, any challenge to the SORA is moot. *See Richard Erling Kelly v. Slatery*, et al., No. 1:18-cv-00170-DCLC-SKL, Memorandum and Order, at 4-5 (E.D. Tenn. Mar. 18, 2021) (Ex post facto challenge to the Tennessee SORA is moot when the offender moves out of state). Defendant is not entitled to relief on this issue.

- 11 -

### III. Whether There was a Fatal Variance Between the Indictment and the Evidence.

Defendant argues that there was a fatal variance between the indictment and the evidence presented by the State at trial because the indictment alleged that the offense occurred on August 26, 2018 and the proof reflected the date of August 6, 2018.

An accused is constitutionally guaranteed the right to be informed of the nature and cause of the accusation. U.S. Const. amend. VI, XIV; Tenn. Const. art. I, § 9; *see Wyatt v. State*, 24 S.W.3d 319, 324 (Tenn. 2000). Our courts have interpreted this constitutional mandate to require an indictment to "1) provide notice to the accused of the offense charged; 2) provide the court with an adequate ground upon which a proper judgment may be entered; and 3) provide the defendant with protection against double jeopardy." *Wyatt*, 24 S.W.3d at 324 (citations omitted). Further, an indictment is statutorily required to "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." T.C.A. § 40-13-202. The question of the validity of an indictment is one of law and, as such, our review is *de novo*. *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997).

"A variance between an indictment or a subsequent bill of particulars and the evidence presented at trial is not fatal unless it is both material and prejudicial." *State v. Shropshire*, 45 S.W.3d 64, 71 (Tenn. Crim. App. 2000) (citing *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984)). A variance is not material when substantial correspondence exists between the proof and the indictment. *Shropshire*, 45 S.W.3d at 71. "A defendant suffers no harm from the variance unless it affects his substantial rights. *State v. Moss,* 662 S.W.2d 590, 592 (Tenn. 1984). When the indictment and the proof substantially correspond, the defendant is not misled or surprised at trial, and there is protection against a second prosecution for the same offense, the variance is not considered material. *Moss*, 662 S.W.2d at 592. It is not reversible error when a defendant is sufficiently aware of the charge and is able to adequately prepare for trial. *Id.*

Tennessee Code Annotated section 40-13-207 provides that "[t]he time at which the offense was committed need not be stated in the indictment, . . . unless the time is a material ingredient in the offense." In *State v. Byrd*, 820 S.W.2d 739 (Tenn. 1991), our supreme court held, "[t]he rule of law is well-established in Tennessee that the exact date, or even the year, of an offense need not be stated in the indictment or presentment unless the date or time 'is a material ingredient in the offense.'" *Id.* at 740 (quoting T.C.A. § 40-13-207). "In fact, in order to establish the legal sufficiency of that charging instrument, the State need only allege that the offense was committed prior to the finding of the indictment or presentment." *Id.*

- 12 -

Defendant in this case has not shown that any variance between the indictment and the evidence presented at trial was both material and prejudicial. The date of the offense is not an essential element of the offense of violating the SORA. Therefore, the date "is immaterial and can be omitted from the indictment." *State v. Taft Arkey Murphy,* M2007–00403-CCA-R3-CD, 2008 WL 4735494, at * 4, (Tenn. Crim. App., Nashville, Oct. 27, 2008), (citing *State v. Shaw,* 113 Tenn. 536, 82 S.W. 480 (Tenn. 1904); *State v. West,* 737 S.W.2d 790, 792 (Tenn. Crim. App. 1987)). We note that the State filed a motion to amend the indictment ten months prior to trial to correct the clerical error and reflect the correct date, and Defendant did not respond to the motion.

We also determine that Defendant did not suffer any prejudice as a result of the incorrect date listed on the indictment. Defendant was sufficiently informed of the charges against him, and he was not misled or otherwise hampered in his ability to present a defense. The variance also did not present a danger that Defendant could be prosecuted a second time for the same offense. *See Moss*, 662 S.W.2d at 592.

Defendant cannot show that his substantial rights were affected by the incorrect date listed on the indictment, and reversible error did not occur. Defendant is not entitled to relief on this issue.

### IV.    Cumulative Error

Defendant contends that he is entitled to a new trial because the cumulative effect of errors denied him a fair trial. The State counters that Defendant has failed to demonstrate that there was more than one error at trial, and proof of Defendant's guilt was overwhelming, therefore he is not entitled to cumulative error relief.

Our supreme court has stated:

> The United States Constitution protects a criminal defendant's right to a fair trial; it does not guarantee him or her a perfect trial. We have reached the same conclusion with regard to the Constitution of Tennessee. It is the protection of the right to a fair trial that drives the existence of and application of the cumulative error doctrine in the context of criminal proceedings. However, circumstances warranting the application of the cumulative error doctrine to reverse a conviction or sentence remain rare.

> The cumulative error doctrine is a judicial recognition that there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial.

*Hester*, 324 S.W.3d at 76-77 (citations omitted).

To warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed in the trial proceedings. *State v. Herron*, 461 S.W.3d 890, 910 (Tenn. 2015) (citing *Hester*, 324 S.W.3d at 77). After considering each of Defendant's issues on appeal and finding only one error that was harmless, we need not consider the cumulative effect of any alleged errors. Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on foregoing analysis, we affirm the judgments of the trial court.

_____
JILL BARTEE AYERS, JUDGE